**Jack and Marie OWENS, Appellants,**

v.

**SHOP 'N SAVE WAREHOUSE FOODS, INC., Respondent.**

No. 75791.

Supreme Court of Missouri, En Banc.

Nov. 23, 1993.

St. Louis. At the time of the accident, Mr. Owens was working for Paintsmiths, Inc., the painting subcontractor. In addition to this lawsuit, he filed and collected on a separate claim against Paintsmiths for workers' compensation benefits.

The procedural history is complex. In the original posture of the case, the trial court granted summary judgment in favor of Shop 'N Save, but the Court of Appeals, Eastern District, reversed. This Court then granted transfer but remanded the case to the circuit court for further proceedings consistent with *Zueck v. Oppenheimer Gateway Properties*, 809 S.W.2d 384 (Mo. banc 1991). On remand, the trial court again granted summary judgment in favor of Shop 'N Save, and the Owens again appealed. Under Rule 83.02, the Court of Appeals ordered transfer of this case having already transferred the similar case of *Matteuzzi v. The Columbus Partnership*, No. 75707. The judgment is affirmed.

According to the trial court record, the facts are as follows: Mr. Owens' job was to spray paint the store's middle deck ceiling and the exposed ceiling bar joists. To accomplish this task, he had to stand on scaffolding that rose about twenty to twenty-one feet above the floor. The type of paint most often used for ceilings is fast-drying paint generically known as "safety spray." The excess spray from this type of paint falls as a dry dust rather than as a slick paint. The color of the paint that Shop 'N Save chose for the ceiling—orange-pink (OP 49)—was not readily available in a safety spray. Because of a construction deadline, there was no time to have this color made up in a safety spray. Consequently, Paintsmiths decided to use oil paint for the job.

Mr. Owens stated that on the first day of painting he had problems with his footing because the oil paint made the scaffolding slick. Although he would ordinarily use a safety line because of the height at which he was working, it was impractical to do so on this job. He explained that when spray painting, the safety line gets in the way, gets wet, and does not otherwise work properly. He added that there was no railing around

Thomas J. Gregory, Shelby Susman, St. Louis, for appellants.

Charles E. Reis, IV, Steven D. Asher, St. Louis, for respondent.

John F. Medler, Jr., St. Louis, for amicus curiae S.W. Bell Tel. Co.

LIMBAUGH, Judge.

Jack and Marie Owens, husband and wife, sued Shop 'N Save Warehouse Foods, Inc., (Shop 'N Save) for personal injuries and for loss of consortium, respectively. Mr. Owens' injuries resulted from an accident that occurred as he painted the ceiling of a Shop 'N Save store under construction in the City of

the scaffolding, even though he asked Paintsmiths that one be installed.

The accident giving rise to this lawsuit occurred on the second day of painting. By then, according to Mr. Owens, the scaffold was wet and slick with paint. As he approached the end of the scaffold, it was so slick that he could not stop. He slid off and fell to the concrete floor, and as a result, suffered serious and permanent injuries.

In this appeal, Mr. Owens claims that Shop 'N Save negligently failed to provide adequate protection for persons performing inherently dangerous work. The particulars of that claim are found in the Owens' first amended petition, which states in pertinent part:

8. That plaintiff Jack Owens was injured as the direct result of the negligence of defendant Shop 'N Save Warehouse Foods, Inc. in the following respects;

(i) Defendant directed Paintsmiths, Inc. to use a color of paint in connection with this spray painting job that was not readily available in a safety spray, and because of time commitments required for completion of the job, ordered use of a paint for spray painting on a scaffold which paint was not available in a safety spray and which made the surface of the scaffold slick and wet when applied and presented a substantial and unreasonable risk of bodily harm to plaintiff.

(ii) Defendant knew or should have known that Paintsmiths, Inc.'s use of the scaffold presented a substantial and unreasonable risk of bodily harm unless special precautions were taken, but

(a) failed to initiate any measures to make the use of the scaffold reasonably safe, and

(b) failed to order Paintsmiths, Inc. to stop use of the scaffold until adequate measures were taken to make the scaffold reasonably safe for persons working thereon.

■ Based on our decision handed down today in *Matteuzzi v. The Columbus Partnership, L.P., et al.*, 866 S.W.2d 128 (Mo. banc 1993), the Owens' apparent reliance on the inherently dangerous activity doctrine is without merit. As we held in *Matteuzzi*, a landowner is not liable under the doctrine to employees of independent contractors covered by workers' compensation. *Matteuzzi*, at 132. This Court in *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 390 (Mo. banc 1991), rejected an employee's cause of action that would allow a landowner to be vicariously liable for the failure of the landowner's independent contractor to take reasonable precautions to prevent injuries from inherently dangerous activities. Today, in *Matteuzzi*, at 132, this Court likewise rejected an employee's cause of action for the landowner's direct negligence in failing to take such precautions.

■ Conceivably, a landowner's liability to employees of the independent contractor may be predicated on a different theory of premises liability. *Id.* As outlined in *Matteuzzi*:

It is well-settled that a property owner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee, and that an employee of an independent contractor who has permission to use a landowner's premises or facilities is such an invitee. If, however, the landowner relinquishes possession and control of the premises to an independent contractor during a period of construction, the duty of care shifts to the independent contractor. The landowner, no longer considered the possessor of the land, is thus relieved of potential liability. On the other hand, to establish that the landowner *retained* possession and control of the premises and the attendant duty of care, [the plaintiff] must show that the landowner controlled the jobsite and the activities of the contractor. As the Court of Appeals stated in *Halmick*, [*v. SBC Corporate Services, Inc.*, 832 S.W.2d 925 (Mo.App.1992) ], "[t]he owner's involvement in overseeing construction must be substantial ... the control must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of the employees of the independent contractors or the details of the manner in which the work is done."

*Matteuzzi*, at 132 (citations omitted).

In this case, Mr. Owens' only evidence of landowner "control" is that Shop 'N Save

selected a color of paint that was not readily available in a safety spray and, after being informed of the problem, still insisted on that color. Shop 'N Save, by merely choosing the type of paint, controls neither the "physical activities of the employees" nor the "details of the manner in which the work is done." In our view, the selection of the color of paint is wholly different from the activity of painting. We hold that the selection of the color of paint was not sufficient "control" to establish premises liability against Shop 'N Save, and therefore, the trial court properly entered summary judgment.

The judgment of the trial court is affirmed.

All concur.